## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

S&P GLOBAL INC.,

IHS MARKIT LTD.,

and

OIL PRICE INFORMATION SERVICES, LLC,

    *Defendants.*

Case No.: 1:21-cv-3003-JEB

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint against S&P Global Inc. ("S&P") and IHS Markit Ltd. ("IHSM") on November 12, 2021;

AND WHEREAS, pursuant to a Stipulation and Order among S&P, IHSM, and Oil Price Information Services, LLC ("OPIS LLC") (collectively, "Defendants") and Plaintiff, the Court has joined OPIS LLC as a defendant to this action for the purposes of settlement and for the entry of this Final Judgment;

AND WHEREAS, Plaintiff and Defendants, have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

1

AND WHEREAS, S&P and IHSM agree to make a divestiture, and Defendants agree to undertake certain actions to remedy the loss of competition alleged in the Complaint;

AND WHEREAS, S&P and IHSM represent that the divestiture to News Corp. required by this Final Judgment can and will be made, Defendants represent that the other relief required by this Final Judgment can and will be made, and Defendants represent that they will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:   .

## I.    JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against S&P and IHSM under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18), and Section 1 of the Sherman Act, as amended (15 U.S.C. § 1). Pursuant to the Stipulation and Order filed simultaneously with this Final Judgment joining OPIS LLC as a defendant to this action, OPIS LLC has consented to this Court's exercise of specific personal jurisdiction over OPIS LLC in this matter solely for the purposes of settlement and for the entry and enforcement of the Final Judgment.

## II.    DEFINITIONS

As used in this Final Judgment:

A.      "Data License" means the Data License Agreement between Oil Price Information Service, LLC, and GasBuddy/Open Store, LLC, dated January 5, 2016.

B.      "Divestiture Business" means (1) IHSM's Oil Price Information Service ("OPIS") business, including the business known as PetrochemWire and OPIS's 15% stake in PRIMA

2

Regulated Markets Limited and 25% stake in a2i systems A/S, and (2) IHSM's Coals, Metals, and Mining ("CMM") business.

      C.      "Divestiture Assets" means all of S&P's and IHSM's rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, (1) owned by the Divestiture Business, or (2) primarily related to or used in connection with, or necessary to the operation of, the Divestiture Business (with the United States, in its sole discretion, to resolve any disagreement regarding which property and assets, tangible and intangible, are Divestiture Assets), including:

      1.      Lease agreements for offices located at: (a) 2099 Gaither Road, Rockville, MD 20850; (b) 3349 Highway 139, Wall Township, NJ 07719; and (c) 1295 Bandana Boulevard North, Saint Paul, MN 55018;

      2.      all other real property, including fee simple interests and real property leasehold interests and renewal rights thereto, and improvements to real property, together with all buildings, facilities, and other structures;

      3.      all tangible personal property, including fixed assets, office equipment and furniture, computer hardware, and supplies;

      4.      all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and all outstanding offers or solicitations to enter into a similar arrangement;

      5.      all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, and all pending applications or renewals;

      6.      all records and data, including (a) customer lists, accounts, sales, and

3

credits records, (b) manuals and technical information that S&P and IHSM provide to their own employees, customers, suppliers, agents, or licensees, and (c) records and research data concerning historic and current research and development activities;

   7. all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications; and

   8. all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) design tools and simulation capabilities, (d) computer software and related documentation, know-how, trade secrets, quality assurance and control procedures, and (e) rights in internet web sites and internet domain names.

  D. "Divestiture Date" means the date on which the Divestiture Assets are divested to News Corp. pursuant to this Final Judgment.

  E. "GasBuddy" means GasBuddy, LLC, a Delaware limited liability company with its headquarters in Boston, Massachusetts, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

  F. "IHSM" means Defendant IHS Markit Ltd., a Bermuda corporation with its headquarters in London, United Kingdom, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

G.    "Including" means including, but not limited to.

H.    "OPIS LLC" means Defendant Oil Price Information Services, LLC, a Maryland limited liability company with its headquarters in Rockville, Maryland, its successors and assigns, and their directors, officers, managers, agents, and employees.

I.    "Relevant Personnel" means all full-time, part-time, or contract employees of IHSM, wherever located, who work in OPIS or CMM, or whose job responsibilities relate primarily to the operation or management of the Divestiture Business, at any time between November 30, 2020, and the Divestiture Date. The United States, in its sole discretion, will resolve any disagreement regarding which employees are Relevant Personnel.

J.    "News Corp." means News Corporation, a Delaware corporation with its headquarters in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

K.    "Regulatory Approvals" means (1) any approvals or clearances under antitrust, competition, or other U.S. or international laws that are required for the Transaction to proceed; and (2) any approvals or clearances under antitrust, competition, or other U.S. or international laws that are required for News Corp.'s acquisition of the Divestiture Assets to proceed.

L.    "S&P" means Defendant S&P Global Inc., a New York corporation with its headquarters in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

M.    "Transaction" means the proposed merger between S&P and IHSM.

5

### III.   APPLICABILITY

A.      This Final Judgment applies to Defendants, as defined above, and all other persons, in active concert or participation with any Defendant, who receive actual notice of this Final Judgment.

B.      If, prior to complying with Section IV and Section V of this Final Judgment, S&P and IHSM sell or otherwise dispose of all or substantially all of their assets or of business units that include the Divestiture Assets, S&P and IHSM must require any purchaser to be bound by the provisions of this Final Judgment.

### IV.   DIVESTITURE

A.      S&P and IHSM are ordered and directed, within 30 calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, to divest the Divestiture Assets in a manner consistent with this Final Judgment to News Corp. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed 90 calendar days in total and will notify the Court of any extensions.

B.      If S&P and IHSM have not received all Regulatory Approvals within 30 calendar days after the Court's entry of the Stipulation and Order in this matter, the time period provided in Paragraph IV.A. will be extended until 30 calendar days after all Regulatory Approvals are received. This extension allowed for securing Regulatory Approvals may be no longer than 120 calendar days past the time period provided in Paragraph IV.A., unless the United States, in its sole discretion, consents to an additional extension.

C.      S&P and IHSM must use best efforts to divest the Divestiture Assets as expeditiously as possible. S&P and IHSM must take no action that would jeopardize the

6

completion of the divestiture ordered by the Court, including any action to impede the permitting, operation, or divestiture of the Divestiture Assets.

      D.    Unless the United States otherwise consents in writing, divestiture pursuant to this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by News Corp. as part of a viable, ongoing business providing commodity price assessments and related news and analysis and that the divestiture to News Corp. will remedy the competitive harm alleged in the Complaint.

      E.    The divestiture must be accomplished in a manner that satisfies the United States, in its sole discretion, that none of the terms of any agreement between News Corp. and S&P and IHSM give S&P and IHSM the ability unreasonably to raise News Corp.'s costs, to lower News Corp.'s efficiency, or otherwise interfere in the ability of News Corp. to compete effectively in providing commodity price assessments and related news and analysis.

      F.    S&P and IHSM must cooperate with and assist News Corp. in identifying and, at the option of News Corp., hiring all Relevant Personnel, including:

      1.    Within 10 business days following the filing of the Complaint in this matter, S&P and IHSM must identify all Relevant Personnel to News Corp. and the United States, including by providing organization charts covering all Relevant Personnel.

      2.    Within 10 business days following receipt of a request by News Corp. or the United States, S&P and IHSM must provide to News Corp. and the United States additional information relating to Relevant Personnel, including name, job title, reporting relationships, past experience, responsibilities, training and educational histories, relevant certifications, and job

7

performance evaluations. S&P and IHSM must also provide to News Corp. and the United States current and accrued compensation and benefits of Relevant Personnel, including most recent bonuses paid, aggregate annual compensation, current target or guaranteed bonus, if any, any retention agreement or incentives, and any other payments due, compensation or benefited accrued, or promises made to the Relevant Personnel. If S&P and IHSM are barred by any applicable law from providing any of this information, S&P and IHSM must provide, within 10 business days following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of S&P's and IHSM's inability to provide the remaining information, including specifically identifying the provisions of the applicable laws.

3.      At the request of News Corp., S&P and IHSM must promptly make Relevant Personnel available for private interviews with News Corp. during normal business hours at a mutually agreeable location.

4.      S&P and IHSM must not interfere with any effort by News Corp. to employ any Relevant Personnel. Interference includes offering to increase the compensation or improve the benefits of Relevant Personnel unless (a) the offer is part of a company-wide increase in compensation or improvement in benefits that was announced prior to November 30, 2020 or (b) the offer is approved by the United States in its sole discretion. S&P's and IHSM's obligations under this Paragraph IV.H.4. will expire 180 calendar days after the Divestiture Date.

5.      For Relevant Personnel who elect employment with News Corp. within 180 calendar days of the Divestiture Date, S&P and IHSM must waive all non-compete and non-disclosure agreements; vest and pay to the Relevant Personnel (or to News Corp. for payment to

8

the employee) on a prorated basis any bonuses, incentives, other salary, benefits or other compensation fully or partially accrued at the time of the transfer of the employee to News Corp.; vest any unvested pension and other equity rights; and provide all other benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with S&P and IHSM, including but not limited to any retention bonuses or payments. S&P and IHSM may maintain reasonable restrictions on disclosure by Relevant Personnel of S&P's and IHSM's proprietary non-public information that is unrelated to the Divestiture Assets or the provision of commodity price assessments and related news and analysis and not otherwise required to be disclosed by this Final Judgment.

    6. For a period of 12 months from the Divestiture Date, S&P and IHSM may not solicit to rehire Relevant Personnel who were hired by News Corp. within 180 days of the Divestiture Date unless (a) an individual is terminated or laid off by News Corp. or (b) News Corp. agrees in writing that S&P and IHSM may solicit to rehire that individual. Nothing in this Paragraph IV.H.6. prohibits S&P and IHSM from advertising employment openings using general solicitations or advertisements and rehiring Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

    G. S&P and IHSM must warrant to News Corp. that (1) the Divestiture Assets will be operational and without material defect on the date of their transfer to News Corp.; (2) there are no material defects in the environmental, zoning, or other permits relating to the operation of the Divestiture Assets; and (3) S&P and IHSM have disclosed all encumbrances on any part of the Divestiture Assets, including on intangible property. Following the sale of the Divestiture

Assets, S&P and IHSM must not undertake, directly or indirectly, challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

H.       S&P and IHSM must assign, subcontract, or otherwise transfer all contracts, agreements, and customer relationships (or portions of such contracts, agreements, and customer relationships) included in the Divestiture Assets, including all supply and sales contracts, to News Corp.; *provided, however,* that for any contract or agreement that requires the consent of another party to assign, subcontract, or otherwise transfer, S&P and IHSM must use best efforts to accomplish the assignment, subcontracting, or transfer. S&P and IHSM must not interfere with any negotiations between News Corp. and a contracting party.

I.       S&P and IHSM must use best efforts to assist News Corp. to obtain all necessary licenses, registrations, and permits to operate the Divestiture Business. Until News Corp. obtains the necessary licenses, registrations, and permits, S&P and IHSM must provide News Corp. with the benefit of S&P's and IHSM's licenses, registrations, and permits to the full extent permissible by law; *provided, however,* that S&P and IHSM need not assist News Corp. to obtain licenses, registrations, or permits to operate as benchmark administrators.

J.       At the option of News Corp., and subject to approval by the United States in its sole discretion, on or before the Divestiture Date, S&P and IHSM must enter into a contract to provide transition services for back office, human resources, accounting, employee health and safety, and information technology services and support for a period of up to 180 days on terms and conditions reasonably related to market conditions for the provision of the transition services. Any amendment to or modification of any provision of a contract to provide transition services is subject to approval by the United States, in its sole discretion. The United States, in its

10

sole discretion, may approve one or more extensions of any contract for transition services, for a

total of up to an additional 180 days. If News Corp. seeks an extension of the term of any

contract for transition services, Defendants must notify the United States in writing at least 90

days prior to the date the contract expires. News Corp. may terminate a contract for transition

services, or any portion of a contract for transition services, without cost or penalty at any time

upon commercially reasonable written notice. The employee(s) of S&P and IHSM tasked with

providing transition services must not share any competitively sensitive information of News

Corp. with any other employee of S&P and IHSM.

K.      If any term of an agreement between S&P and IHSM and News Corp., including

an agreement to effectuate the divestiture required by this Final Judgment, varies from a term of

this Final Judgment, to the extent that S&P and IHSM, OPIS LLC, and News Corp. cannot fully

comply with both, this Final Judgment determines S&P's, IHSM's, OPIS LLC's and News

Corp.'s obligations.

## V.    APPOINTMENT OF DIVESTITURE TRUSTEE

A.      If S&P and IHSM have not divested the Divestiture Assets within the period

specified in Paragraphs IV. A. and IV.B., S&P and IHSM must immediately notify the United

States of that fact in writing. Upon application of the United States, which S&P and IHSM may

not oppose, the Court will appoint a divestiture trustee selected by the United States and

approved by the Court to effect the divestiture of the Divestiture Assets to News Corp.

B.      After the appointment of a divestiture trustee by the Court, only the divestiture

trustee will have the right to sell the Divestiture Assets. The divestiture trustee will have the

power and authority to accomplish the divestiture to News Corp., at a price and on terms

11

obtainable through reasonable effort by the divestiture trustee, subject to the provisions of

Sections IV and V of this Final Judgment, and will have other powers as the Court deems

appropriate. The divestiture trustee must sell the Divestiture Assets as quickly as possible.

      C.     The divestiture trustee must notify the United States, S&P, and IHSM at least 7

calendar days before completion of the sale of the of the Divestiture Assets to News Corp. S&P

and IHSM may not object to a sale to News Corp. by the divestiture trustee on any ground other

than malfeasance by the divestiture trustee.

      D.     The divestiture trustee will serve at the cost and expense of S&P and IHSM

pursuant to a written agreement, on terms and conditions, including confidentiality requirements

and conflict of interest certifications, approved by the United States, in its sole discretion.

      E.     The divestiture trustee may hire at the cost and expense of S&P and IHSM any

agents or consultants, including investment bankers, attorneys, and accountants, that are

reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's

duties. These agents or consultants will be accountable solely to the divestiture trustee and will

serve on terms and conditions, including confidentiality requirements and conflict-of-interest

certifications, approved by the United States in its sole discretion.

      F.     The compensation of the divestiture trustee and agents or consultants hired by the

divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on

a fee arrangement that provides the divestiture trustee with incentives based on the price and

terms of the divestiture and the speed with which it is accomplished. If the divestiture trustee and

S&P and IHSM are unable to reach agreement on the divestiture trustee's compensation or other

terms and conditions of engagement within 14 calendar days of the appointment of the

divestiture trustee by the Court, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to S&P and IHSM and the United States.

G.      The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets sold by the divestiture trustee and all costs and expenses incurred. Within 30 calendar days of the Divestiture Date, the divestiture trustee must submit that accounting to the Court for approval. After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to S&P and IHSM and the trust will then be terminated.

H.      S&P and IHSM must use best efforts to assist the divestiture trustee to accomplish the required divestiture to News Corp. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, S&P and IHSM must provide the divestiture trustee and agents or consultants retained by the divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. S&P and IHSM also must provide or develop financial and other information relevant to the Divestiture Assets that the divestiture trustee may reasonably request. S&P and IHSM must not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestiture to News Corp.

I.      The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets to News Corp., including by filing monthly reports with the United States

setting forth the divestiture trustee's efforts to accomplish the divestiture ordered by this Final Judgment.

J.      If the divestiture trustee has not accomplished the divestiture ordered by this Final Judgment within 180 days of appointment, the divestiture trustee must promptly provide the United States with a report setting forth: (1) the divestiture trustee's efforts to accomplish the required divestiture; (2) the reasons, in the divestiture trustee's judgment, why the required divestiture has not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestiture. Following receipt of that report, the United States may make additional recommendations to the Court. The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which may include extending the trust and the term of the divestiture trustee's appointment by a period requested by the United States.

K.      The divestiture trustee will serve until divestiture of all Divestiture Assets to News Corp. is completed or for a term otherwise ordered by the Court.

L.      If the United States determines that the divestiture trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute divestiture trustee.

## VI.    FINANCING

S&P and IHSM may not finance all or any part of News Corp.'s purchase of all or part of the Divestiture Assets.

## VII.   ASSET PRESERVATION AND HOLD SEPARATE OBLIGATIONS

Defendants must take all steps necessary to comply with the Asset Preservation and Hold

14

Separate Stipulation and Order entered by the Court.

## VIII.   AFFIDAVITS

A.     Within 20 calendar days of the filing of the Complaint in this matter, and every 30 calendar days thereafter until the divestiture required by this Final Judgment has been completed, S&P and IHSM must deliver to the United States an affidavit, signed by each S&P's and IHSM's Chief Financial Officer and General Counsel, describing in reasonable detail the fact and manner of S&P's and IHSM's compliance with this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

B.     S&P and IHSM must keep all records of any efforts made to divest the Divestiture Assets until one year after the Divestiture Date.

C.     Within 20 calendar days of the filing of the Complaint in this matter, S&P and IHSM must deliver to the United States an affidavit signed by S&P's and IHSM's Chief Financial Officer and General Counsel, that describes in reasonable detail all actions S&P and IHSM have taken and all steps that S&P and IHSM have implemented on an ongoing basis to comply with Section VII of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

D.     If S&P or IHSM makes any changes to actions and steps described in affidavits provided pursuant to Paragraph VIII.D., S&P or IHSM, as applicable, must, within 15 calendar days after any change is implemented, deliver to the United States an affidavit describing those changes.

E.     S&P and IHSM must keep all records of any efforts made to comply with Section VII until one year after the Divestiture Date.

## IX.    REQUIRED CONDUCT

Prior to the Divestiture Date, and no later than five business days after the Court's entry of the Stipulation and Order in this matter, S&P and IHSM must notify GasBuddy in writing that, effective on the date of completion of the Transaction, OPIS LLC (1) waives the exclusivity obligation in the license grant in Section 2(a) of the Data License, so as to render the license of GasBuddy retail data to OPIS LLC non-exclusive; and (2) waives the GasBuddy restrictive covenants, including the non-compete provision enumerated in Section 4(c) of the Data License. Before such written notice is provided to GasBuddy, the form and content of the written notice must be approved by the United States, in its sole discretion.

## X.    PROHIBITED CONDUCT

A.      Without the prior written consent of the United States, in its sole discretion, S&P and IHSM will not (1) enter into, enforce, renew, or extend the term of any exclusive licenses for the provision to S&P and IHSM of GasBuddy's data; or (2) enter into, enforce, renew, or extend the term of any non-compete provisions relating to GasBuddy's data.

B.      Without the prior written consent of the United States, in its sole discretion, OPIS LLC will not (1) enter into, enforce, renew, or extend the term of any exclusive licenses for the provision to OPIS LLC of GasBuddy's data or U.S. retail gas price data of any other third-party provider; or (2) enter into, enforce, renew, or extend the term of any non-compete provisions relating to GasBuddy's data or U.S. retail gas price data of any other third-party provider.

## XI.    COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Asset Preservation and Hold Separate Stipulation and Order or of

16

determining whether this Final Judgment should be modified or vacated, upon written request of

an authorized representative of the Assistant Attorney General for the Antitrust Division, and

reasonable notice to Defendants, Defendants must permit, from time to time and subject to

legally recognized privileges, authorized representatives, including agents retained by the United

States:

    1.  to have access during Defendants' office hours to inspect and copy, or at

the option of the United States, to require Defendants to provide electronic copies of all books,

ledgers, accounts, records, data, and documents in the possession, custody, or control of

Defendants relating to any matters contained in this Final Judgment; and

    2.  to interview, either informally or on the record, Defendants' officers,

employees, or agents, who may have their individual counsel present, relating to any matters

contained in this Final Judgment. The interviews must be subject to the reasonable convenience

of the interviewee and without restraint or interference by Defendants.

    B.  Upon the written request of an authorized representative of the Assistant Attorney

General for the Antitrust Division, Defendants must submit written reports or respond to written

interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

    C.  No information or documents obtained pursuant to this Section may be divulged

by the United States to any person other than an authorized representative of the executive

branch of the United States, except in the course of legal proceedings to which the United States

is a party, including grand jury proceedings, for the purpose of securing compliance with this

Final Judgment, or as otherwise required by law.

    D.  In the event of a request by a third party for disclosure of information under the

Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with

that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the

provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendants submitting

information to the Antitrust Division should designate the confidential commercial information

portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of

confidentiality expire ten years after submission, "unless the submitter requests and provides

justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United

States pursuant to this Section, Defendants represent and identify in writing information or

documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the

Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material,

"Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure,"

the United States must give Defendants ten (10) calendar days' notice before divulging the

material in any legal proceeding (other than a grand jury proceeding).

## XII.    NO REACQUISITION

S&P and IHSM may not reacquire any part of or any interest in the Divestiture Assets

during the term of this Final Judgment without prior authorization of the United States.

## XIII.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

18

## XIV.   ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this

Final Judgment, including the right to seek an order of contempt from the Court. Defendants

agree that in a civil contempt action, a motion to show cause, or a similar action brought by the

United States relating to an alleged violation of this Final Judgment, the United States may

establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a

preponderance of the evidence, and Defendants waive any argument that a different standard of

proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive

purposes of the antitrust laws and to restore the competition the United States alleges was

harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and

that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court

in light of these procompetitive principles and applying ordinary tools of interpretation, is stated

specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In

any such interpretation, the terms of this Final Judgment should not be construed against either

party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Defendants have

violated this Final Judgment, the United States may apply to the Court for an extension of this

Final Judgment, together with other relief that may be appropriate. In connection with a

successful effort by the United States to enforce this Final Judgment against a Defendant,

whether litigated or resolved before litigation, that Defendant agrees to reimburse the United

States for the fees and expenses of its attorneys, as well as all other costs including experts' fees,

incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

D.      For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIV.

## XV.   EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire 10 years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestiture has been completed and continuation of this Final Judgment is no longer necessary or in the public interest.

## XVI.   PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the

public interest.

Date: ___3|21|22___

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____
United States District Judge